**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Elvin G. Grundy, Jr. and Willie Ruth Grundy, | No. CV10-1542 PHX DGC |
| Plaintiffs, | |
| vs. | **ORDER** |
| JPMorgan Chase Bank, N.A., et al., | |
| Defendants. | |

**I.  Plaintiffs' Status Memorandum.**

On March 18, 2011, *pro se* Plaintiffs filed a bankruptcy-related status report pursuant to this Court's order dated January 24, 2011 (Doc. 31). Doc. 35. Plaintiffs' report states that, according to the bankruptcy trustee assigned to Plaintiffs' petition, "the bankruptcy matter was officially closed in December 2010 with a finding from the trustee of 'no assets to administer.'" Doc. 35 at 1. Plaintiffs do not dispute the trustee's assertions. The trustee further advised that he will not intervene in this case, and that Plaintiffs may either proceed with the lawsuit in this Court or seek adjudication of the claims in bankruptcy court. *Id.* at 1-2. Despite their earlier misgivings about proceeding in bankruptcy court, Plaintiffs now wish to do so. *Id.* at 3. Plaintiffs acknowledge that all but one of the defendants in this case are not Plaintiffs' creditors. *Id.* In light of the foregoing and Plaintiffs' failure to file a formal motion for a bankruptcy reference, the Court will take no action on Plaintiffs'

1  memorandum.[1]  The Court sees no legal bars to this action proceeding in this Court.

## II. Motion to Dismiss.

On March 2, 2011, Defendant Quality Loan Service Corporation ("QLS") filed a motion to dismiss the claims against them under Rule 12(b)(6).  Doc. 34.  Plaintiffs were served via U.S. Mail (Doc. 34 at 6), and they filed a response on March 24, 2011 (Doc. 36). The parties have not requested oral argument, and the motion has been fully briefed (Docs. 34, 36, 37).  The Court will grant the motion.

### A. Legal Standard.

When analyzing a complaint for failure to state a claim to relief under Rule 12(b)(6), the well-pled factual allegations "'are taken as true and construed in the light most favorable to the nonmoving party.'" *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009) (citation omitted). Legal conclusions couched as factual allegations "are not entitled to the assumption of truth," *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009), and therefore "'are insufficient to defeat a motion to dismiss for failure to state a claim,'" *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010) (citation omitted).  To avoid a Rule 12(b)(6) dismissal, the complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

---

[1] Plaintiffs' memorandum asserts that bankruptcy courts have core jurisdiction over "proceedings affecting the . . . adjustment of the debtor-creditor . . . relationship." Doc. 35 at 2 (quoting 28 U.S.C. § 157(b)(2)(O)).  In light of a "no asset" finding by the bankruptcy trustee and closure of the bankruptcy matter, however, Plaintiffs fail to show how pursuing this action in bankruptcy court would affect the bankruptcy debtor-creditor relationship.

- 2 -

**B.     Discussion.**

Plaintiffs' complaint asserts seven claims against QLS corresponding to the following numbered counts: 1, 2, 3, 8, 9, 10, and 11. Doc. 27. As a threshold matter, QLS argues that it is entitled to dismissal with prejudice because under A.R.S. § 33-807(E) the trustee of a deed of trust may be joined only in "legal actions pertaining to a breach of the trustee's obligations pursuant to A.R.S. §§ 33-801 et seq." Doc. 34 at 3. But at least one claim in Plaintiffs' complaint alleges violation of such obligations (*see* Doc. 27 at 36-37). Because § 33-807(E) is the sole basis for QLS's request for attorney fees (Doc. 34 at 1:16-17), the request is denied. The Court will address QLS's specific arguments as to each claim below.

**1.     Count 1 – A.R.S. §§ 13-2301 et seq.**

Plaintiffs allege residential mortgage fraud in violation of A.R.S. § 13-2320(A), and also appear to allege racketeering as defined in §§ 13-2301(D)(4) or 13-2312. Doc. 27 at 22, 24. QLS argues the loan that serves as the basis for this count was made in 2007 and that QLS had nothing to do with the loan. Doc. 34 at 4. Moreover, QLS asserts that the claim fails to plead particularized allegations with respect to QLS. *Id.* Plaintiffs do not address this argument other than to assert that QLS "was, or is now, acting as an agent of co-Defendants in advancing the mortgage servicing and foreclosure racket." Doc. 36 at 3:16-17.

The Court agrees that Plaintiffs have not pled factual allegations against QLS in Count 1 with sufficient particularity as required under *Twombly* and *Iqbal*. The complaint is unclear whether Plaintiffs aim to allege that QLS is liable for mortgage fraud, racketeering, or both. The complaint also fails to allege sufficient facts from which a court may find the claim plausible on its face. The claim will therefore be dismissed against QLS without prejudice.

**2.     Count 2 – Fraud.**

QLS argues this claim should be dismissed on the same grounds as Count 1. Plaintiffs do not directly address this argument. The Court will dismiss this claim against QLS without prejudice for the same reasons as discussed for Count 1 above.

### 3.     Count 3 – Breach of Covenant of Good Faith and Fair Dealing.

QLS argues that it performed no act that violated the covenant implied by either the Note or Deed of Trust. Plaintiffs respond that QLS recorded a defective notice of trustee sale, did nothing to correct the error upon being notified by Plaintiffs, and failed to provide an affidavit of publication upon request. Doc. 36 at 3. QLS replies that the notice of trustee sale conforms with A.R.S. § 33-808 notwithstanding the address being listed as "808E Desert Drive N, Phoenix, AZ 85042" instead of "808 E Desert Drive N, Phoenix, AZ 85042." Doc. 37 at 2. QLS also asserts that it did not breach its duties, but does not specifically address whether fulfillment of its duty required QLS to correct the erroneous notice or to provide an affidavit of publication. *Id.*

In Arizona, the existence of a duty of care is a matter of law for the Court. *Lips v. Scottsdale Healthcare Corp.*, 229 P.3d 1008, 1010 (Ariz. 2010). "Duties of care may arise from special relationships based on contract, family relations, or conduct undertaken by the defendant, and from public policy considerations." *Id.* (quoting *Gipson v. Kasey*, 150 P.3d 228, 230 (Ariz. 2007)) (internal quotation marks omitted). In this case, it is undisputed that QLS had a duty as trustee of the deed of trust. The question remains, however, whether QLS breached this duty by publishing a typographically-erroneous notice, failing to correct the error, and failing to provide Plaintiffs with an affidavit of publication.

In Arizona, a party to a contract may breach the covenant of good faith and fair dealing by "act[ing] to impair the right of the other to receive the benefits which flow from their agreement or contractual relationship." *Rawlings v. Apodaca*, 726 P.2d 565, 569 (Ariz. 1986). A trustee of a deed of trust in Arizona is required to publish a notice of trustee sale. A.R.S. § 33-808(A)(4). Moreover, the notice of sale must be recorded, § 33-808(A)(1), and must include the street address of the property, § 33-808(C)(2). These requirements inure to the benefit of the homeowners. *See Patton v. First Federal Sav. and Loan Ass'n of Phoenix*, 578 P.2d 152, 156 (Ariz. 1978) ("The Deed of Trust statutes thus strip borrowers of many of the protections available under a mortgage. Therefore, lenders must strictly comply with the Deed of Trust statutes, and the statutes and Deeds of Trust must be strictly

1  construed in favor of the borrower.").

2      In Arizona, deed-of-trust trustees are "common agents" of the trustor and beneficiary,
3  not "trustees" in the traditional sense. *In re Bisbee*, 754 P.2d 1135, 1138 (Ariz. 1988) (citing
4  *Kerivan v. Title Ins. & Trust Co.*, 147 Cal. App. 3d 225, 229 (1983)).  They can be liable
5  under agency theories of liability, unless otherwise provided by law. *See id.*; *accord*
6  *Kerivan*, 147 Cal. App. 3d at 229 (observing that a deed-of-trust trustee is "the agent of all
7  the parties to the escrow . . . and bears a fiduciary relationship to each of them," that "[h]is
8  obligation to each is measured by an application of the ordinary principles of agency," and
9  that "[a]s an agent, the trustee may be liable for negligence").  Arizona law exempts deed-of-
10 trust trustees from liability for recording notices with erroneous addresses unless they have
11 done so wilfully and intentionally.  A.R.S. § 33-808(E).

12     The Court would dismiss this claim under A.R.S. § 33-808(E), but QLS fails to make
13 that argument.  The Court finds, nonetheless, that Count 3 must be dismissed for another
14 reason.  QLS's motion argues that the third claim does not allege it performed an act that was
15 a breach.  Doc. 34 at 4.  QLS is correct in this assertion because Plaintiffs' third cause of
16 action incorporates paragraphs 1 through 171, and the facts cited by Plaintiffs' response to
17 the motion appear only beginning with paragraph 233.  Doc. 27.  Count 3 is not based on the
18 facts argued in Plaintiffs' brief, and therefore will be dismissed.

19     **4.    Count 8 – Fair Housing Act.**

20     QLS argues the claim fails to allege it engaged in discrimination or violation of
21 42 U.S.C. § 3605.  Doc. 34 at 4.  Plaintiffs respond that their allegations of violating the Fair
22 Housing Act "are applicable here given QLS' inexplicable and egregious abdication of their
23 trustee duties," and that "[o]nly after reasonable discovery will Plaintiffs be able to determine
24 the true animus behind QLS' gross neglect and bias in favor of co-Defendants."  Doc. 36 at
25 5:1-8.  Plaintiffs' claim incorporates paragraphs 1 through 214, inclusive, and the facts
26 alleged by Plaintiffs in the response appear only beginning with paragraph 233.  Doc. 27.
27 The Court will therefore dismiss this claim against QLS without prejudice due to deficient
28 pleading.

1         **5.**        **Count 9 – Unjust Enrichment.**

2         A claim of unjust enrichment under Arizona law has five elements: "(1) an
3 enrichment, (2) an impoverishment, (3) a connection between the enrichment and
4 impoverishment, (4) the absence of justification for the enrichment and impoverishment, and
5 (5) the absence of a remedy provided by law." *Freeman v. Sorchych*, 245 P.3d 927, 936
6 (Ariz. App. 2011) (citing *City of Sierra Vista v. Cochise Enters., Inc.*, 697 P.2d 1125, 131-32
7 (Ariz. App. 1984)).

8         QLS argues solely that the claim fails to allege QLS was enriched. Doc. 34 at 4
9 ("There is no claim that [QLS] will benefit from 'conduct of other named DEFENDANTS'").
10 Plaintiffs' response does not appear to address this argument. Doc. 7. Plaintiffs' claim as
11 pled, however, expressly states: "ALL DEFENDANTS, even trustee QUALITY LOAN
12 SERVICE CORP., stands to benefit from the egregious and illegal predatory conduct of other
13 named DEFENDANTS." Doc. 27 at 34 (alterations in original).

14         This allegation, however, is utterly devoid of a factual basis. The complaint pleads
15 no facts that give rise to a plausible claim that QLS's involvement in these events will result
16 in its enrichment at the hands of Plaintiffs as required for unjust enrichment. Count 9
17 therefore will be dismissed without prejudice.

18         **6.**        **Count 10 – Intentional Infliction of Emotional Distress.**

19         Under Arizona law, the tort of intentional infliction of emotional distress has three
20 elements: (1) conduct that is extreme and outrageous; (2) an intent to cause emotional
21 distress or reckless disregard for the near certainty that emotional distress will result; and
22 (3) the actual occurrence of severe emotional distress as a result of the conduct. *Ford v.*
23 *Revlon, Inc.*, 734 P.2d 580, 585 (Ariz. 1987). The first element is met when a defendant's
24 conduct is "so outrageous in character and so extreme in degree, as to go beyond all possible
25 bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized
26 community." *Mintz v. Bell Atl. Sys. Leasing Int'l, Inc.*, 905 P.2d 559, 563 (Ariz. App. 1995)
27 (citations omitted). Sometimes conduct may be deemed extreme and outrageous due to the
28 manner in which it is carried out. *See id.* at 564 n.1.

QLS argues the claim fails to plead conduct that was extreme and outrageous. Doc. 34 at 4. Plaintiffs respond that QLS caused emotional distress by "their unwillingness to supply the documentation requested." Doc. 36 at 2. Although Plaintiffs' complaint alleges Mrs. Grundy was hospitalized in poor health when QLS's co-Defendants pressured Plaintiffs into signing loan documents (Doc. 27 at 8-9, 9:25-28, 36:6-7), it does not allege that QLS took part in this conduct or that QLS was even part of the transaction at the time. The claim, incorporating paragraphs 1 through 231, inclusive (Doc. 27), pleads no conduct on the part of QLS that is plausibly extreme and outrageous under Arizona law. The claim will be dismissed without prejudice.

### 7.     Count 11 – A.R.S. § 33-808(E).

QLS asserts that the notice of trustee sale complied with statutory requirements, that any error in the property address contained in the notice does not invalidate the trustee sale, and that publication was made as required by statute. Doc. 34 at 5. QLS also attaches a copy of the affidavit Plaintiffs had previously sought. *Id.* at 12. Accordingly, QLS argues, the claim should be dismissed. *Id.* at 5. Plaintiffs' response appears to argue that past conduct of QLS in recording a defective notice, failing to correct the notice, and failing to provide Plaintiffs with the affidavit of publication makes QLS liable in tort for damages.[2] Doc. 36; *see also* Doc. 27 at 37:13-17. QLS appears to acknowledge in its reply that the property address in the notice of sale was listed as "808E Desert Drive N, Phoenix, AZ 85042" instead of "808 E Desert Drive N, Phoenix, AZ 85042." Doc. 37 at 2. QLS maintains, however, that under A.R.S. § 33-808 this does not invalidate the trustee sale. *Id.*

Claim 11 appears to seek damages, not invalidation of the trustee sale. Doc. 27 at 37:13-17 ("Conduct by [Defendants] entitles [Plaintiffs] to recover punitive damages from [Defendants] in an amount according to proof."). Plaintiffs argue in their response that they

---

[2] Plaintiffs also argue that QLS is an agent of co-defendants "in advancing the mortgage servicing and foreclosure racket that has injured poor and minority persons as Plaintiffs." Doc. 36 at 3. Claim 11 is not a cause of action for racketeering or mortgage fraud, however. *See* Doc. 27 at 36:21  The Court will therefore reject this argument.

- 7 -

seek relief in tort, but Count 11 clearly is based on a violation of A.R.S. § 33-808(E). Doc. 27 at 37-38. That statute provides that "[t]he trustee or any person furnishing information to the trustee shall not be subject to liability for any error or omission in the information required by subsection C of this section except for the wilful and intentional failure to provide such information." § 33-808(E). Plaintiffs have not plausibly alleged, and cannot plausibly allege, that QLS's clear scrivener's error of omitting a space between "808" and "E" in the address was a willful and intentional violation of the statute. Claim 11 will be dismissed.

**IT IS ORDERED:**

1. QLS's motion to dismiss (Doc. 34) is **granted**.

2. QLS's motion for attorney fees (Doc. 34) is **denied**.

3. The Court will set a Rule 16 scheduling conference by separate order.

DATED this 4th day of May, 2011.

_____
David G. Campbell
United States District Judge